**David Mark KLAUS, Plaintiff,**

v.

**John F. BLAKE and United States Central Intelligence Agency, Defendants.**

**Civ. A. No. 76–1274.**

United States District Court,
District of Columbia.

Nov. 4, 1976.

---

Victor H. Kramer, Washington, D. C., for plaintiff.

Paul F. Figley, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiff is seeking documents from the Central Intelligence Agency concerning the Agency's basis for determining that it is authorized to engage in covert activities against foreign nations. The documents were initially requested in April and July of 1975 and, following administrative appeals, this action was brought in July, 1976.*

All the documents requested, including even those developed subsequent to the request, have been released to plaintiff. Plaintiff persists, however, since the CIA has refused to turn over portions of two paragraphs of a memorandum dated April 6, 1962, which are classified as "Secret" under Executive Order 11652 and, therefore, claimed to be exempt from mandatory disclosure pursuant to 5 U.S.C. § 552(b)(1). The Agency filed a motion to dismiss or, in the alternative, for summary judgment, and submitted an affidavit in support of the exemption claimed. The matter was briefed and thoroughly argued.

The decision of the Congress which made the Freedom of Information Act applicable to the CIA has not resolved the inherent conflict between a desire to promote disclo-

---

* Defendant Blake was dismissed from the action by Stipulation and Order filed October 12, 1976.

sure of documents revealing how public business is conducted and a need to conduct the nation's foreign intelligence activities under cover. This relatively simple Freedom of Information Act ("FOIA") case serves well to illustrate the dilemma which confronts a judge seeking to reconcile the national policy of disclosure expressed in the Act with the obvious need of our Government to preserve the secrecy of its clandestine activities abroad for reasons of national security.

The paragraphs which the Agency claims are exempt concern the Agency's surreptitious involvement in a foreign election, and an undercover mission to obtain a scarce metal from a communist-dominated foreign country. These events occurred more than 14 years ago.

If the Court's role is simply to determine whether, since the time of the FOIA request, an authorized classification officer has conscientiously classified portions of the documents being withheld as "Secret" under the Executive Order, the task is relatively simple. The affidavit filed by the Agency is wholly sufficient in this regard, and there would be no need to go further. If, on the other hand, the Court is required to satisfy itself that disclosure is likely to affect the national security adversely, difficulties are presented. Obviously, a Court aided only by an *in camera* document examination does not have the training or competence to make a judgment as to the national security implications of classified material. An *ex parte* hearing with Agency personnel would be required, resulting in a distasteful Star Chamber-like proceeding from which the guarantees of trustworthiness achieved by confrontation and cross-examination are absent. There is, moreover, no guarantee that such a hearing could, in the last analysis, give adequate guidance. The national security issue is necessarily speculative. Intelligence deals with possibilities. Our knowledge of the attitudes of and information held by opponents is uncertain. Determinations of what is and what is not appropriately protected in the interests of national security involves

an analysis where intuition must often control in the absence of hard evidence. This intuition develops from experience quite unlike that of most Judges.

There is, in this connection, a related problem that dramatically exposes the impracticality of a Court attempting to replace the judgment of the classification officer with its own. Encouraged by the teachings of *Vaughn v. Rosen*, 157 U.S.App. D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415, U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), which was not a national security case, plaintiff urges that the Court not only examine the documents, but that it also play the role of censor. It is suggested that if the material in its present form involves the national security, the Court should attempt, line-by-line, to insert blanks in the actual text, removing the name of the foreign country involved or the designation of the metal until the remaining portions of the withheld text may be publicly disclosed without endangering the national security. While ingenious counsel urges that this would not be a difficult task here, one must recognize that many CIA cases involve masses of documents where the approach would obviously be impractical, both because of the time and expense, and the uncertainties involved. The process could be endless and subject to repeated hearings.

Against this background, the Court has concluded that it will not hold an *in camera* proceeding where an adequate affidavit demonstrating that the documentary material claimed exempt on grounds of national security has been conscientiously re-examined by a classification officer, and remains classified "Secret" or "Top Secret." It is clear that this approach to the problem is consistent with the intent of Congress. The legislative history supports the view that a Court may rely on affidavits, that an *in camera* proceeding is not mandatory, and, indeed, that an *in camera* proceeding should be held sparingly and only where clear necessity is shown. The Court need only determine that, as in this instance, the classification officer made a conscientious decision to keep the withheld portions "Secret,"

and that the claimed exemption is not pre-textual. The Court recognizes that a vital issue of public policy, on which there are sharp differences and a wide range of views, is presented. These are matters, however, with which the Court should not and cannot become involved unless specifically so directed by the Congress. The CIA claim of exemption in this instance will be upheld on the showing made by the affidavit without *in camera* inspection, and the motion of defendant for summary judgment is granted.

SO ORDERED.